1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   NEWTON A. PHILLIPS and NINFA              CASE NO. 12-CV-748-MMA (WMC)
     ELIZONDO-CAMPOS PHILLIPS,
12                                             **ORDER GRANTING**
                              Plaintiffs,      **DEFENDANTS' MOTION TO**
13        vs.                                  **DISMISS**

14                                             [Doc. No. 5]
     EDMUNDO DOMINGUEZ HERNANDEZ
15   *et al.*,

16                            Defendants.

17

18        Currently pending before the Court is Defendants Edmundo Dominguez Hernandez, Jose

19   Carballo Yepiz, Beatriz Dominguez Suarez, Bernardo Dominguez Suarez, and Mercedes Suarez

20   Dominguez's (collectively "Defendants") Motion to Dismiss Plaintiffs' Complaint for Lack of

21   Personal Jurisdiction and Improper Venue pursuant to Federal Rules of Civil Procedure 12(b)(2)

22   and 12(b)(5).  [Doc. No. 5.]  Plaintiffs opposed the motion [Doc. No. 14], and Defendants filed a

23   reply [Doc. No. 15].  On September 5, 2012, the Court took the matter under submission on the

24   papers pursuant to Local Civil Rule 7.1.  [Doc. No. 6.]  For the reasons set forth below, the Court

25   **GRANTS** Defendants' motion and **DISMISSES** Plaintiffs' complaint.

26                                **I. BACKGROUND**

27        Plaintiffs Newton Phillips ("Newton") and Ninfa Elizondo-Campos Phillips are residents

28   of Yuma County, Arizona.  [*Compl.* ¶ 1.]  Defendants are all residents of Rosarito Beach, Mexico.

                                        - 1 -                          12CV748

1    [*Id.* ¶¶ 2-6.]  In October 2003, Plaintiffs traveled to Rosarito, Mexico to visit Newton's longtime

2    friend, Defendant Jose Carballo Yepiz ("Jose").  [*Id.* ¶ 10.]  Over breakfast, Plaintiffs and Jose

3    discussed the idea of investing money in real property located along the coastline in Baja

4    California, Mexico.  [*Id.* ¶ 11.]  Jose mentioned that his cousin, Defendant Edmundo Dominguez

5    Hernandez ("Edmundo"), was looking to sell vacant land owned by Edmundo in Bahia

6    Concepcion, Mexico.  [*Id.* ¶¶ 11-12.]  Edmundo needed a good business partner to help develop

7    the property.  [*Id.* ¶ 12.]

8         Two weeks later, Plaintiffs, Jose, and Edmundo met in Rosarito to discuss Edmundo's

9    investment opportunity.  [*Id.* ¶ 12-13.]  Edmundo expressed that he was looking for business

10   partners to invest capital in real property that he owned outside Loreto, Baja California, Mexico.

11   [*Id.* ¶ 14.]  He planned to develop the land into various residential and temporary dwelling

12   structures.  [*Id.* ¶ 18.]  Edmundo stated he held perfected title to the land free and clear of all

13   encumbrances.  [*Id.* ¶ 15.]

14        After a few more meetings, Plaintiffs and Edmundo drove to Bahia Concepcion to see the

15   property.  [*Id.* ¶ 17.]  Upon viewing the property, Plaintiffs articulated concern that the property

16   was far away from any populated city, and lacked the necessary infrastructure to maintain the type

17   of development contemplated by Edmundo.  [*Id.*]  Edmundo eased Plaintiffs' concerns by

18   informing them that Mexican billionaire Carlos Slim planned to develop land in the region.  [*Id.* ¶

19   18.]  The same day, Newton gave Edmundo $7,000.00 to "get[] the paperwork on [the] property in

20   order," in exchange for two hectares of land.  [*Id.* ¶ 19.]

21        Thereafter, Newton and Edmundo agreed to form a joint venture, wherein Edmundo would

22   front the property and Newton would supply the money to develop the property.  Specifically,

23   Edmundo would sell a 50% ownership stake in the profits of the real estate development in

24   exchange for a total investment from Newton of $80,000.00.  [*Id.* ¶ 20.]  The parties' agreement

25   also stated that if Newton found over ten people interested in purchasing property, then the price

26   per lot would be $25,000 rather than $30,000, with an immediate $5,000 paid up front per lot.  [*Id.*

27   ¶ 23.]  Newton later found five willing investors, each of whom made the $5,000 up front payment

28   to Edmundo.  [*Id.* ¶ 23.]  Newton was ultimately responsible for repaying these investors.  [*Id.*]

1    Subsequently, between December 2005 to late 2006, Newton transferred approximately

2  $38,500 to Edmundo, as well as a Dodge Ram truck worth $5,000.  [*Id.* ¶¶ 24-25.]  Newton

3  learned Edmundo never used the truck for the purposes discussed, but instead gave it to his son,

4  Defendant Bernardo Dominguez Suarez.  [*Id.* ¶ 25.]

5    In May 2006, Newton hired a Mexican attorney to inspect the chain of title on the property.

6  [*Id.* ¶ 26.]  The attorney discovered that Edmundo did not own the land, and had not recorded the

7  land contract between Newton and Edmundo.  Following this, Newton sought assurances from

8  Edmundo that he did, in fact, own the land; Edmundo said the problems were easily remedied.  [*Id.*

9  ¶ 27.]  In 2009, Plaintiffs found that others had recorded competing instruments in reference to the

10  subject property.  [*Id.* ¶ 28.]  Two years passed until Plaintiffs next met with Edmundo, again in

11  Rosarito.  There, Edmundo told Plaintiffs that he would settle all accounts related to the matter

12  within two months.  [*Id.* ¶ 31.]  He has not contacted them since.  [*Id.* ¶ 32.]

13    As a result, Plaintiffs initiated the present action, alleging claims of breach of contract,

14  unconscionability, undue influence, fraud, and misrepresentation.  [*Id.* at pp. 6-8.]  Plaintiffs allege

15  each Defendant had full knowledge that Defendant Edmundo did not have legal ownership of the

16  property in question.  [*Id.* ¶ 30.]  Plaintiffs further assert that Defendants participated in a general

17  scheme to defraud Plaintiffs and other United States citizens.  [*Pl.s' Opp.* 3-4.]

18                  **II.  LACK OF PERSONAL JURISDICTION**

19  **1.  Legal Standard**

20    Federal Rule of Civil Procedure 12(b)(2) allows a district court to dismiss an action for

21  lack of personal jurisdiction.  "Where defendants move to dismiss a complaint for lack of personal

22  jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate."  *Dole*

23  *Food Co. Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).  "The court may consider evidence

24  presented in affidavits to assist in its determination and may order discovery on the jurisdictional

25  issues."  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2011) (citing *Data Disc, Inc. v. Sys.*

26  *Tech. Ass'n, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  "When a district court acts on the

27  defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only

28  a prima facie showing of jurisdictional facts to withstand a motion to dismiss."  *Id.* (citing *Ballard*

1  *v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).

2       "Unless directly contravened, [Plaintiffs'] . . . facts [are] taken as true, and conflicts

3  between the facts contained in the parties' affidavits must be resolved in [Plaintiffs'] favor for

4  purposes of deciding whether a prima facie case for personal jurisdiction exists."  *Harris Rutsky &*

5  *Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citations

6  omitted).  However, the court may not assume the truth of such allegations if they are contradicted

7  by affidavit.  *Data Disc*, 557 F.2d at 1284.

8       There are two independent limitations on a court's power to exercise personal jurisdiction

9  over a non-resident defendant: the applicable state personal jurisdiction statute and constitutional

10  principles of due process.  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  California's

11  jurisdictional statute, however, is coextensive with federal due process requirements; therefore,

12  "the jurisdictional analyses under state law and federal due process are the same."

13  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004).

14       The exercise of jurisdiction over a non-resident defendant violates the due process clause

15  unless the defendant has "minimum contacts" with the forum state so that the exercise of

16  jurisdiction "does not offend traditional notions of fair play and substantial justice."  *International*

17  *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Due process is satisfied if the court has "either

18  general jurisdiction or specific jurisdiction" over the defendant.  *Doe v. Am. Nat'l Red Cross*, 112

19  F.3d 1048, 1050 (9th Cir. 1997).

20  **2. Analysis**

21       Plaintiffs assert that the Court may exercise both general and specific jurisdiction over

22  Defendants, whereas Defendants contend personal jurisdiction does not exist under either

23  standard.  The Court examines each in turn.

24       *A.  General Jurisdiction*

25       "A defendant whose contacts with a state are 'substantial' or 'continuous and systematic'

26  can be haled into court in that state in any action, even if the action is unrelated to those contacts."

27  *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (citing

28  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984), *overruled in part on*

1    *other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199,

2    1206 (9th Cir. 2006) (en banc).  "This is known as general jurisdiction.  The standard for

3    establishing general jurisdiction is fairly high and requires that the defendant's contacts be of the

4    sort that approximate physical presence."  *Id.* (citations omitted).  "Factors to be taken into

5    consideration are whether the defendant makes sales, solicits or engages in business in the state,

6    serves the state's markets, designates an agent for service of process, holds a license, or is

7    incorporated there."  *Id.*

8          Plaintiffs allege that "[t]his Court has general jurisdiction over defendants because the

9    contract at issue was executed in San Diego, California."  [*Compl.* ¶ 7.]  Plaintiffs further assert

10   (without supporting documentation) that Defendants engage in heavy advertising in California,

11   receive large payments from California residents, and have "systematically and continuously used

12   California's banking system to collect money from California residents."  [*Pl.s' Opp.* 8.]

13         The Court finds that Plaintiffs' unsupported, conclusory jurisdictional allegations are

14   insufficient to confer general jurisdiction over Defendants.  Defendants submit affidavits which

15   contend they have never (1) owned or leased real or personal property in California; (2) owed or

16   been required to pay taxes in California; (3) maintained an office in California; (4) maintained a

17   registered agent in California; (5) had employees in California; or (6) conducted promotions or

18   sponsored events in California.  [*See* Doc. No. 5-2, Exs. 1-5.]

19         Plaintiffs attach a contract signed by Defendant Edmundo and The Loreto Project (by Al

20   Villa as its representative), which was entered into in San Diego.  [*See* Doc. No. 1-1.] However,

21   Edmundo states that this was his sole visit to San Diego in connection with the transaction

22   between 2006 and the present.  [*Edmundo Dominguez Decl.*, Doc. No. 5-2, p. 2.]  Newton signed

23   the contract, but as a *witness*, not as a party.  Otherwise, Plaintiffs do not provide affidavits or any

24   other helpful documentation establishing Defendants' presence in California.  This single foray

25   into San Diego does not constitute continuous and systematic contact with California.  Further, the

26   Court notes that Plaintiffs' jurisdictional allegations are contradicted by other allegations in the

27   complaint, which show that Plaintiffs and Defendant Edmundo negotiated and contracted entirely

28   in Mexico.

1        Accordingly, the Court concludes that Defendants lack "continuous and systematic"

2    contacts with California for the Court to confer general jurisdiction.  *Schwarzenegger*, 374 F.3d at

3    801.

4        ***B.  Specific Jurisdiction***

5        "Specific jurisdiction exists where the cause of action arises out of or has substantial

6    connection to the defendant's conduct with the forum."  *ChemRisk, LLC v. Chappel*, 2011 U.S.

7    Dist. LEXIS 50997, at *8 (N.D. Cal. May 11, 2011).  To determine whether specific jurisdiction

8    exists, the Court employs "a three-part test to evaluate the nature and quality of [the defendant's]

9    contacts" with the forum state:

10       (1)  The non-resident defendant must purposefully direct his activities or consummate
         some transaction with the forum or resident thereof; or perform some act by which he
11       purposefully avails himself of the privilege of conducting activities in the forum, thereby
         invoking the benefits and protections of its laws;
12
         (2)  the claim must be one which arises out of or relates to the defendant's forum-related
13       activities; and

14       (3)  the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it
         must be reasonable.
15

16   *Schwarzenegger*, 374 F.3d at 801-02 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

17       The plaintiff bears the burden of satisfying the first two requirements of the test above.  *Id.*

18   (citation omitted).  If the plaintiff fails to satisfy either of these requirements, personal jurisdiction

19   does not lie.  *Id.*  However, if the plaintiff succeeds in satisfying the first two requirements, "the

20   burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction

21   would not be reasonable."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78).

22   If a plaintiff fails to satisfy the first requirement, the court need not proceed to the two remaining

23   requirements.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) ("if the plaintiff

24   fails at the first step, the jurisdictional inquiry ends and the case must be dismissed")

25       **1.  Purposeful Availment/Direction**

26       The first prong of the specific jurisdiction test is divided into two distinct concepts:

27   "purposeful availment," which most often applies to contract cases, and "purposeful direction,"

28   which usually applies to tort cases.  *Schwarzenegger*, 374 F.3d at 802.  Because Plaintiffs assert

1   both contract and tort claims against Defendants, the Court will evaluate Plaintiffs' claims under

2   both tests.

3        "Purposeful availment . . . requires that the defendant . . . 'perform[] some type of

4   affirmative conduct which allows or promotes the transaction of business within the forum state.' "

5   *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001) (quoting *Sher v. Johnson*, 911 F.2d 1357,

6   1362 (9th Cir. 1990)).  A showing of purposeful availment typically consists of evidence of the

7   defendant's actions in the forum, such as executing or performing a contract there, which thereby

8   invoke the benefits and protections of the forum's laws.  *Hanson v. Denckla*, 357 U.S. 235, 253

9   (1958).

10       Here, Plaintiffs allege that Defendants purposefully availed themselves of the benefits of

11  performing business in California by engaging in advertising that specifically targets California

12  residents, creating advertising material in English, entering into numerous transactions with

13  California residents, and using California banking institutions.  [*Pl.s' Opp*. 8:12-18.]  Defendants

14  dispute this.  [*See Defendants' Decls.* Doc. No. 5-2, Exs. 1-5.]  The Court declines to take judicial

15  notice of these facts in Plaintiffs' opposition papers.  *See Data Disc*, 557 F.2d at 1284 (a court

16  "may not assume the truth of allegations in a pleading contradicted by affidavit.").

17       Plaintiffs' most plausible argument is that Defendant Edmundo traveled to San Diego to

18  enter into the option contract attached as an exhibit to Plaintiffs' complaint.  [*See* Doc. No. 1-1.]

19  However, this contract cannot constitute grounds for *specific* personal jurisdiction as the *cause of*

20  *action* must arise out of or have substantial connection to the defendant's conduct with the forum.

21  *See Chappel*, 2011 U.S. Dist. LEXIS 50997, at *8.  As Plaintiffs are not a party to the contract

22  entered into in San Diego, their cause of action cannot have arisen out of the circumstances

23  surrounding that contract.  Further, even assuming that Defendants and Plaintiffs did enter into a

24  contract in California, the existence of such a contract is not enough to demonstrate purposeful

25  availment.  *See Burger King*, 471 U.S. at 478 (one contract alone does not establish that a

26  defendant has purposefully availed himself of privileges in the forum state).  Therefore, Plaintiffs

27  do not satisfy the "purposeful availment" standard.

28  / / /

1   Alternatively, Plaintiffs appear to argue that the "purposeful direction" standard should

2   apply.  Under this standard, it is not necessary for the defendant to have direct contact with the

3   forum state.  Rather, courts "typically inquire whether a defendant 'purposefully direct[s] his

4   activities' at the forum state, applying an 'effects' test that focuses on the forum in which the

5   defendant's actions were felt, whether or not the actions themselves occurred within the forum."

6   *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.

7   2006) (en banc) (quoting *Schwarzenegger*, 374 F.3d at 803) (alteration in original).  To satisfy the

8   effects test:

9   the defendant must have (1) committed an intentional act, which was (2) expressly
    aimed at the forum state, and (3) caused harm, the brunt of which is suffered and
10  which the defendant knows is likely to be suffered in the forum state . . . . [T]he
    [express aiming] requirement is satisfied when the defendant is alleged to have
11  engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to
    be a resident of the forum state.

12

13  *Bancroft & Masters, Inc.*, 223 F.3d at 1087 (internal citation omitted).

14                          **a.  Intentional Acts**

15  "'Intentional act' has a specialized meaning in the context of the . . . effects test."

16  *Schwarzenegger*, 374 F.3d at 806.  Courts in the Ninth Circuit "construe 'intent' in the context of

17  the 'intentional act' test as referring to an intent to perform an actual, physical act in the real

18  world, rather than an intent to accomplish a result or consequence of that act."  *Schwarzenegger*,

19  374 F.3d at 806.

20  For purposes of the purposeful direction test, Defendant Edmundo acted with intent when

21  he allegedly breached his contract with Newton.  This qualifies as an intentional act.

22                    **b.  Expressly Aimed at the Forum State**

23  "Express aiming" is the second requirement of the purposeful direction test.  "[T]he

24  'express aiming' requirement . . . is satisfied when the defendant is alleged to have engaged in

25  wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum

26  state."  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (quotations and citation

27  omitted); *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011);

28  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129-31 (9th Cir. 2010).

1    Here, Plaintiffs are not residents of California, but of *Arizona*.  Thus, Defendants may

2  have known they engaged in wrongful conduct targeted at a resident of Arizona, but not

3  California. As a result, any wrongful acts Defendants committed against Plaintiffs were not aimed

4  at the forum state, California.  Plaintiffs do not satisfy the express aiming requirement.

5                    **c.  Harm Likely to Be Suffered in Forum State**

6    Finally, the foreseeable harm "element is satisfied when defendant's intentional act has

7  'foreseeable effects' in the forum."  *Brayton Purcell*, 606 F.3d at 1131 (quoting *Yahoo!*, 433 F.3d

8  1199 at 1207).  "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it

9  does not matter that even more harm might have been suffered in another state."  *Yahoo!*, 433 F.3d

10  at 1207.

11    As mentioned above, because Plaintiffs reside in Arizona, it is mostly unforeseeable that

12  the effects of any wrongful conduct would be felt in California.  On the other hand, it may have

13  been foreseeable that Plaintiffs would seek out investors who were California residents, who

14  would then be harmed by Edmundo's acts.  However, this is not alleged, and thus is pure

15  conjecture.  This factor also weighs against Plaintiffs.

16    Plaintiffs have not established that Defendants purposefully availed themselves of, or

17  purposefully directed their activities towards the forum state, California.  Consequently, the Court

18  need not proceed to the remaining inquiries under the Ninth Circuit's specific jurisdiction test.  *See*

19  *Boschetto*, 539 F.3d at 1016.  Thus, Plaintiffs have failed to demonstrate that either general or

20  specific personal jurisdiction exists over Defendants.  Accordingly, the Court **GRANTS**

21  Defendants' motion to dismiss for lack of personal jurisdiction.

22    Because the Court dismisses Plaintiffs' claim for lack of personal jurisdiction, the Court

23  does not address Defendants' improper venue claims.

24   **3.  Limited Jurisdictional Discovery**

25    Plaintiffs request that the Court grant limited jurisdictional discovery in the event it is

26  inclined to dismiss the case for lack of personal jurisdiction.  [*Pl.s' Opp.* 8.]  The Court has "broad

27  discretion to permit or deny [jurisdictional] discovery."  *Calix Networks, Inc. v. Wi–Lan, Inc.*,

28  2010 U.S. Dist. LEXIS, at *7 (N.D. Cal. Sept. 8, 2010) (quoting *Laub v. U.S. Dep't of the Interior*,

1   342 F.3d 1080, 1093 (9th Cir. 2003)).  The district court should ordinarily grant jurisdictional

2   discovery where "pertinent facts bearing on the question of jurisdiction are controverted or where

3   a more satisfactory showing of the facts is necessary." *Data Disc*, 557 F.2d at 1285 n. 1.

4   However, "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and

5   based on bare allegations in the face of specific denials made by defendants, the Court need not

6   permit even limited discovery . . . ." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir.

7   1995). "Although there is no definitive Ninth Circuit authority specifically addressing the level of

8   showing that a plaintiff must make to be entitled to jurisdictional discovery, district courts in this

9   circuit have required a plaintiff to establish a 'colorable basis' for personal jurisdiction before

10  discovery is ordered." *Martinez v. Manheim Cent. Cal.*, 2011 U.S. Dist. LEXIS 41666, at *10

11  (E.D. Cal. 2011) (quoting *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007)).

12      As previously discussed, Plaintiffs have failed to provide even a colorable basis for

13  personal jurisdiction.  Nor have Plaintiffs provided any level of detailed indication as to what

14  discovery would establish.  In contrast, Defendants' affidavits explicitly and unequivocally deny

15  any physical presence in California.  For these reasons, the Court declines to permit jurisdictional

16  discovery as it would appear to be futile in this case.

17                          **III.  CONCLUSION**

18      For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs'

19  Complaint for lack of personal jurisdiction, and dismisses Plaintiffs' complaint without prejudice.

20  The Clerk of Court is instructed to enter judgment in accordance herewith and terminate the

21  action.

22      **IT IS SO ORDERED.**

23  DATED: October 18, 2012

24

25

                                    Hon. Michael M. Anello
26                                  United States District Judge

27

28